```
JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

AARON D. WEGNER (CABN 243809)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6831
   Facsimile: (415) 436-6982
   E-Mail: aaron.wegner@usdoj.gov

Attorneys for the United States of America
```

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>    v.<br><br>VINCENTE FRANCO ESCALERA,<br><br>         Defendant. | No. CR 09-0103 CRB<br><br>UNITED STATES SENTENCING MEMORANDUM<br><br>Date: July 14, 2010<br>Time: 2:15 p.m.<br>Court: Hon. Charles R. Breyer |

On January 14, 2010, the defendant pled guilty to Count One of the Indictment charging him with knowingly and intentionally conspiring to possess with intent to distribute and to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A). On the same date, the defendant also pled guilty to Count Sixteen of the Indictment charging him with knowingly and intentionally possessing with intent to distribute and distribute fifty grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii). There is no plea agreement in this case.

On July 1, 2010, the government received the final Presentence Report ("PSR") in this matter. The PSR recommended a high-end guideline sentence of 168 months. For the reasons detailed below, the government concurs with the PSR's recommended sentence.

## BACKGROUND

The government's long term investigation into the Rafael Franco Perez's drug organization began in the fall of 2006 and concluded with nine individuals, including the defendant, being arrested on February 4, 2009. The organization imported drugs into the United States through the Mexican border and distributed kilogram-quantities of controlled substances, in particular crystal methamphetamine and heroin, in and around the San Francisco Bay Area. As detailed in the PSR, the defendant purchased methamphetamine from Perez and was intimately involved with the delivery of 6.3 kilograms of crystal methamphetamine from Mexico to Los Banos, California.

In early November of 2008, based on interceptions from a federally authorized wiretap on the Perez's cellular telephone, agents identified a shipment of crystal methamphetamine being sent from Mexico to Perez in the Bay Area. On November 17, 2008, Perez was intercepted giving directions to the driver of the truck containing the methamphetamine, co-defendant Joel Ceja Mendoza. A short time later, Perez was intercepted giving directions to the defendant, whose task was to meet Ceja Mendoza and help unload the methamphetamine. The original plan called for the methamphetamine to be unloaded at the defendant's home. However, after Ceja-Mendoza expressed concern that the defendant's home did not have an enclosed garage, Perez instructed the defendant and Ceja Mendoza to drive to Ceja Mendoza's home in Los Banos, California. A short time later, the California Highway Patrol pulled over Ceja Mendoza and discovered 6.3 kilograms of actual methamphetamine stored in a secret compartment in the transmission. Perez was later intercepted commenting to the defendant, "I hope they don't take him [Ceja Mendoza] to the station, because if so, that's going to be it for that guy."

On February 4, 2009, the defendant was arrested and a federal search warrant was executed on his home in Stockton, California.

## **LEGAL STANDARD**

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Id*.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Carty*, 520 F.3d at 991. The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.*

## **ARGUMENT**

**A.       The Correct Guidelines Range Is 135 to 168 Months In Prison**

1.       The Correct Guidelines Calculation Is Level 33

The government and the Probation Office agree that the following sentencing guidelines calculation is correct:

| Base offense level | USSG § 2D1.1(c)(1) | 38 |
|---|---|---|
| Safety Valve reduction | USSG §2D1.1(b)(11) | -2 |
| Defendant accepted responsibility | USSG §3E1.1(a)+(b) | -3 |
| Total offense level | | 33 |

(PSR ¶¶ 34-45.)

    2.    The Defendant's Criminal History Category Is CHC I

The government agrees with the Probation Office's calculation of the defendant's criminal history, resulting in a Criminal History Category of I. (PSR ¶ 47.) However, the defendant has nine misdemeanor convictions, including five convictions for Driving with a Suspended License, two convictions for Driving Under the Influence, and a conviction for Inflict Corporal Injury on a Spouse.

    3.    The Correct Guidelines Range Is 135-168 Months In Prison

The guidelines range provided for Offense Level 33 and Criminal History Category I is 135 to 168 months in prison. *See* U.S.S.G., Sentencing Table. The sentencing range lies in Zone D of the Sentencing Table, and the sentence must therefore be served in prison. *Id*.

**B.    Prison Sentence Of 168 Months Satisfies The 3553(a) Factors**

Analysis of the Guidelines and § 3553(a) shows that 168 months in prison is a reasonable and appropriate sentence in this case, and for this defendant.

    1.    **168 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – § 3553(a)(1)**

    a.    The Defendant's History And Characteristics Warrant A 168 Month Sentence

It appears that the defendant does not object to the proposed offense level computations or the resulting advisory guidelines range. However, the defendant seeks a downward variance from that range. Given the defendant's direct involvement in the receipt and shipment of 14 pounds of methamphetamine in this case, as well the defendant's nine prior misdemeanor

convictions, the government does not believe that the defendant deserves a variance from the guidelines range in this case.

The defendant began living in the United States in late 1970's, and it appears that he lived a law abiding life until 1984. Starting in 1984 and ending in 1997, the defendant was convicted of nine separate misdemeanors. Although not counted for purposes of criminal history, the government believes these convictions demonstrate the defendant's proclivity for violating the law and a penchant for using violence.

For example, on May 13, 1997, after suffering eight prior misdemeanor convictions, the defendant was convicted of Inflict Corporal Injury on a Spouse. According to the Oakland Police reports of the incident, the defendant was involved in a physical altercation with his wife. During the altercation, the defendant hit his wife several times and possibly broke her jaw.

In addition to his criminal convictions, the Court should consider the defendant's arrest for discharging a firearm into a home on July 10, 1994. According to the Oakland Police reports of the incident, the defendant got into an altercation with his neighbors and fired two rounds from a shotgun their apartment building. The police recovered a shotgun shell from the scene and noted damage to the apartment's window. However, for unknown reasons, the state failed to prosecute the defendant for the offense.

Despite this arrest and his nine prior misdemeanor convictions, it appeared that the defendant had turned his life around after 1997. The defendant worked as a carpenter and a truck driver from 1998-2007 and avoided any contact with law enforcement officers during this time. However, beginning in 2008, the defendant began working for Perez's drug organization. On April 2, 2008, pursuant to a federally authorized wiretap, Perez was intercepted instructing co-defendant Josefina Rodriguez to prepare a package containing approximately 225 grams of methamphetamine. Perez instructed Rodriguez to drive to an International House of Pancakes ("IHOP") in Redwood City and deliver the methamphetamine to his "cousin." Perez then provided Rodriguez with a physical description of the defendant. Later that evening, agents observed Rodriguez drive to the IHOP parking lot and meet with the defendant. During the

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                -5-

meeting, Rodriguez provided the defendant with 225 grams of methamphetamine and the defendant provided Rodriguez with an unknown amount of cash. Based on this transaction, it appears that the defendant had been distributing methamphetamine for Perez for a significant period of time.

However, the true value of the defendant to the organization was displayed during the delivery of 6.3 kilograms of crystal methamphetamine to Perez on November 17, 2008. According to the agents involved in this investigation, the street value of the methamphetamine was approximately $250,000. Based on wiretap recordings and surveillance, the defendant's role in the transaction was two-fold: 1) meet the driver of the truck containing the methamphetamine; and 2) help the driver unload the methamphetamine at the defendant's house. The sole fact that the defendant was entrusted with receiving such a large amount of drugs demonstrates the level of responsibility given to him by the organization. It also demonstrates the tremendous level of trust the organization had in the defendant's ability to carry out any task assigned to him.

Despite the defendant's conduct, the defendant urges the Court to grant him a downward variance. No such variance is warranted. The defendant's actions in this case clearly demonstrate that he was a trusted and valued member of a large-scale drug organization. In addition, his criminal history, while dated, is significant and shows that the defendant has little respect for the laws of the United States. Also, due to the age of the defendant's prior convictions, the defendant falls into the lowest criminal history category, which significantly under-represents the seriousness of his criminal past.

### 2.     168 Months In Prison Should Deter The Defendant From Further Illegal Activity and Protect the Public from Further Crimes– §3553(a)(2)(B)+(C)

A sentence of 168 months, the high end of the sentencing range for offense level 33, would demonstrate that involvement in the importation of 14 pounds of methamphetamine is a serious offense that results in substantial punishment. Furthermore, the defendant stands before the Court convicted of ten crimes in the United States and the government believes there is a

high likelihood that the defendant will commit future crimes when released from his sentence. Therefore, a sentence of 168 months will adequately address the seriousness of this offense, promote respect for the law, provide just punishment, protect the community, deter the defendant from future criminal conduct, and deter other individuals tempted to engage in large-scale narcotics trafficking.

## CONCLUSION

The defendant had an opportunity to be a productive, law-abiding citizen after serving his sentence for domestic violence in 1997. However, the defendant squandered that opportunity and became an important member of a large-scale narcotics organization. This type of behavior does not warrant a downward variance pursuant to the § 3553(a) factors. Rather, the government believes that only a high-end guidelines sentence adequately accomplishes the goals of § 3553(a) and properly addresses the defendant's significant criminal history. Therefore, based on the foregoing, the Government recommends a sentence of a term of imprisonment of 168 months, five years of supervised release (with conditions to be fixed by the Court), and a $100 special assessment.

DATED: July 7, 2010

                                                 Respectfully submitted,

                                                 JOSEPH P. RUSSONIELLO
                                                 United States Attorney

                                               /s/
                                               AARON D. WEGNER
                                               Assistant United States Attorney